IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENDOBOTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-381-CFC |
| | ) | |
| MEDROBOTICS CORPORATION, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff Endobotics, LLC ("Endobotics"), hereby alleges for its Complaint for Patent Infringement against Medrobotics Corporation ("Medrobotics" or "Defendant") on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This action arises under 35 U.S.C. § 271 for Defendants' infringement of Endobotics' U.S. Patent Nos. 7,147,650 and 8,409,245 (attached hereto as Exhibits A-B, respectively).

## PARTIES

2.     Plaintiff Endobotics is a Delaware limited liability company with a registered agent located at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

3.     Defendant Medrobotics is a Delaware corporation with a place of business at 475 Paramount Drive, Raynham, Massachusetts 02767.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35 of the United States Code, §§ 100, *et seq*.

5.     Subject matter jurisdiction over Endobotics' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

6.     This Court has personal jurisdiction over Defendant Medrobotics because, upon information and belief, Medrobotics is incorporated under the laws of the State of Delaware and has a registered agent for service of process in Delaware.

7.     This Court also has personal jurisdiction over Medrobotics because, upon information and belief, Medrobotics markets, sells, and/or offers for sale the Accused Products (defined *infra*) nationally, including to Delaware, and therefore, Medrobotics has established minimum contacts with this forum and regularly conducts business in in this forum, demonstrating that Medrobotics has continuous and systematic contacts with Delaware. The exercise of personal jurisdiction comports with Medrobotics' right to due process, because it has purposefully availed itself of the privilege of conducting activities nationally, including within the District of Delaware, such that it should reasonably anticipate being hailed into court here.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b) at least because Defendant Medrobotics is a Delaware corporation, and upon information and belief, transacts business within this district, and has committed acts in this district that infringe U.S. Patent Nos. 7,147,650 and 8,409,245.

## BACKGROUND

9.     Endobotics' predecessor-in-interest, Cambridge Endoscopic Devices, Inc. ("Cambridge"), developed and manufactured minimally invasive surgical tools.  For example, Cambridge developed a surgical instrument that increases the manipulative ability of a surgical tool affixed to the end of the surgical instrument. Recognizing their value to laparoscopic surgery as well as trans-oral and trans-anal surgery, Endobotics acquired the patents-in-suit and

Cambridge's know-how and trade secrets when Cambridge went bankrupt.

10.     Medrobotics manufactures and sells a single-port surgery solution with a highly articulated multi-linked scope, providing a single-port approach with increased maneuverability. (*See https://medrobotics.com/gateway/flex-robotic-system/*).     This product incorporates the features claimed in numerous claims in Endobotics' patents.     Since at least early 2017, Medrobotics has known about Endobotics' patents.  Endobotics sent Medrobotics numerous letters and claim charts, in which Endobotics informed Medrobotics in detail that their product incorporates a number of features claimed in Endobotics' patents.

11.     Upon information and belief, Defendant designed and manufactured their product with Design Standards Corporation of Charlestown, New Hampshire, the same company used by Cambridge to design and manufacture Cambridge's surgical tools. Defendant's surgical tool looks substantially similar to Cambridge's surgical instrument that was previously on the market. Design Standards Corporation had access to the know how and trade secrets of Cambridge that are now owned by Endobotics. Given the similarity of Medrobotic's products to Cambridge's products, discovery may show that Endobotic's know how and trade secrets were misappropriated by Design Standards and/or Medrobotics.

12.     Defendant has refused to negotiate in good faith to avoid this lawsuit.  Even after Endobotics presented detailed claim charts highlighting the elements of the Endobotics patents and mapping them to elements of the Medrobotics product, Defendant refused to substantive discuss a license to cure the infringement.

## COUNT 1:  INFRINGEMENT OF U.S. PATENT NO. 7,147,650

13.     Endobotics re-alleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

14.     United States Patent No. 7,147,650 ("the '650 patent"), entitled "Surgical Instrument," was duly and legally issued by the U.S. Patent and Trademark Office on December 12, 2006.  Endobotics is the owner by assignment of all right, title and interest in and to the '650 patent, including all right to recover for any and all infringement thereof.   All necessary maintenance fees for the '650 patent have been timely paid in full.  The '650 patent is valid and enforceable.  A true and correct copy of the '650 patent is attached as Exhibit A.

15.     Claim 4 of the '650 patent recites, for example, a surgical instrument.  The surgical instrument includes an elongated instrument shaft with proximal and distal ends.  A surgical tool is disposed from the distal end of the instrument shaft, and is coupled to the instrument shaft via a first movable member.  A control handle is disposed from the proximal end of the instrument shaft, and is coupled to the instrument shaft via a second movable member. Movement of the control handle with respect to the elongated instrument shaft, via the second movable member, causes attendant movement of the tool with respect to the instrument shaft via the first movable member. At least one of the first and second members comprises a bendable motion member, with the maximum transverse cross-sectional dimension of the second movable member being different than that of the first movable member.  The tool movement with respect to the distal end of the elongated shaft is in the same direction of the control handle movement with respect to the proximal end of the elongated shaft.

16.     Claim 31 of the '650 patent recites, for example, a surgical instrument.  The surgical instrument includes an elongated instrument shaft with proximal and distal ends.  A surgical tool is disposed from the distal end of the instrument shaft, and is coupled to the instrument shaft via a first movable member.  A control handle is disposed from the proximal end of the instrument shaft, and is coupled to the instrument via a second movable member.  Movement of the control handle

4

with respect to the elongated instrument shaft, via the second movable member, causes attendant movement of the tool with respect to the instrument shaft via the first movable member. At least one of the first and second members includes a bendable motion member. The first movable member is axially rotatable about the elongated shaft due to a distal axial rotation joint.

17.    Claim 41 of the '650 patent recites, for example, a surgical instrument. The surgical instrument includes an elongated instrument shaft with proximal and distal ends. A surgical tool is disposed from the distal end of the instrument shaft, and is coupled to the instrument shaft via a first movable member. A control handle is coupled to the proximal end of the instrument shaft via a second movable member. Movement of the control handle with respect to the elongated instrument shaft, via the second movable member, causes attendant movement of the tool with respect to the instrument shaft via the first movable member. At least one of the first and second members includes a bendable motion member. The tool is axially rotatable about the first movable member via a distal axial rotation joint.

18.    Claim 60 of the '650 patent recites, for example, a surgical instrument. The surgical instrument includes an elongated instrument shaft with proximal and distal ends. A surgical tool is disposed from the distal end of the instrument shaft, and is coupled to the instrument shaft via a first movable member. A control handle is disposed from the proximal end of the instrument shaft, and is coupled to the proximal end via a second movable member. Movement of the control handle with respect to the elongated instrument shaft, via the second movable member, causes attendant movement of the tool with respect to the instrument shaft via the first movable member. At least one of the first and second members includes a bendable motion member. The tool is axially rotatable about the first movable member via a distal axial rotation joint.

19.    Dependent claim 6 of the '650 patent further recites that the diameter of the second

movable member is greater than the diameter of the first movable member.

20.     Dependent claim 7 of the '650 patent further recites that the control handle is able to axially rotate relative to at least one of the instrument shaft and the second movable member.

21.     Dependent claim 8 of the '650 patent further recites that the surgical instrument includes a mechanism for locking the relative orientation between the first and second movable members at a predetermined position.

22.     Dependent claim 10 of the '650 patent further recites that the surgical instrument includes a rotation knob adjacent the control handle.  The rotation knob is rotatable relative to the control handle, for causing a corresponding rotation of the tool about a distal tool roll axis.

23.     Dependent claim 34 of the '650 patent further recites that the instrument shaft is flexible for passage intraluminally.

24.     Dependent claim 36 of the '650 patent further recites that the surgical instrument further includes a rolling-motion wheel adjacent the control handle and rotatable relative to the control handle, for causing a corresponding rotation of the tool about a distal tool roll axis.

25.     Dependent claim 38 of the '650 patent further recites that the surgical instrument further includes a mechanism for locking the relative orientation between the distal and proximal movable members at a predetermined position.

26.     Dependent claim 44 of the '650 patent further recites that the instrument shaft is flexible for passage intraluminally.

27.     Dependent claim 46 of the '650 patent further recites that the surgical instrument further includes a rolling-motion wheel adjacent the control handle and rotatable relative to the control handle, for causing a corresponding rotation of the tool about a distal tool roll axis.

28.     Dependent claim 48 of the '650 patent further recites that the surgical instrument

further includes a mechanism for locking the relative orientation between the distal and proximal movable members at a predetermined position

29. Dependent claim 65 of the '650 patent further recites that the locking mechanism is disposed at the proximal end of the instrument shaft.

30. Dependent claim 66 of the '650 patent further recites that the locking mechanism fixes the orientation of the first and second movable members by immobilizing the cable means.

31. Dependent claim 73 of the '650 patent further recites that surgical instrument further includes a distal axial rotation joint for axially rotating at least one of the first bendable and member and tool, relative to the instrument shaft.

32. Dependent claim 74 of the '650 patent further recites that the surgical instrument further includes a rotation knob adjacent the control handle and rotatable relative to the control handle, for causing a corresponding rotation of the tool about a distal tool roll axis.

33. Defendant makes, uses, sells, offers to sell, and/or imports into the United States surgical instruments that implement what Defendant calls a "highly articulated multi-linked scope that can be steered along non-linear, circuitous paths" to operate through a single access site in their "Flex Robotic System" (the "Accused Products"). (*See*, *e.g.*, Exhibit C printout of https://medrobotics.com/gateway/flex-robotic-system/). The patented technology is a critical part of the Flex Robotic System and drives customer demand. These Accused Products include without limitation the Flex Robotic System and all variations known to Plaintiff. The Accused Products incorporate the features claimed in numerous claims in the '650 patent.

34. The Accused Products include a surgical instrument. For example, as illustrated in the overview video as the Flex Robotic System Animation on https://medrobotics.com/gateway/surgicalvideos/:



35.     The Accused Products include an elongated shaft with proximal and distal ends.  A tool is disposed from the distal end of the instrument shaft, and is coupled to the instrument shaft via a first movable member.  For example:



36.     The Accused Products include a control handle disposed from the proximal end of the instrument shaft.  The control handle is coupled to the instrument shaft via a second movable member.  On information and belief, Medrobotics' U.S. Patent No. 9,517,059 (Medrobotics '059

Patent) shows the actual, or near actual, construction of Medtrobotics products. Plaintiffs

information and belief is informed by all public information (photographs and videos) of

Medrobotic's products. As illustrated in Medrobotics '059 Patent:



37.     The Accused Products include movement of the control handle with respect to the

elongated instrument shaft, via the second movable member, causing attendant movement of the

tool with respect to the instrument shaft via the first movable member.  For example, this feature

is described in the Medrobotics '059 Patent, col. 13, lines 26-40:

> The controls in the handle 205 can advance and/or retract a plurality of
> steering cables 410a-410d (generally, 410), also referred to as articulation
> cables, coupled between a proximal portion of the tool 200 and the distal
> end of the articulation region 235. Articulation region 235 can articulate
> in either a single degree of freedom steering mode or a multiple degree of
> freedom steering mode as described hereabove. One or more steering
> cables 410 can extend from the U-joint 252 through a path extending
> through the housing 210 and the tool shaft 215, 220 to the distal end of
> articulation region 235. Steering cables 410a, 410b can be constructed
> and arranged as horizontal steering cables, which extend from the hub

212 to the articulation region 235, and when activated move the articulation region 235 with a single degree of freedom.

38.     The Accused Products include the feature that at least one of the first and second members include a bendable motion member.  For example, the Medrobotics '059 Patent in column 14, lines 40-43, states "the support element 231 can include elastic bending and/or plastic deformation characteristics, and can therefore flex or bend in response to a flexing or bending of the shaft 220 and/or the articulation region 235," while in column 22, line 67, it further explains that "an operator can apply a force F1, i.e., tension, to a second steering cable 410b to bend the articulation region 235 to a desired angle of articulation."  This is further illustrated in FIG. 7A of the Medrobotics '059 Patent:





39.     The Accused Products have a maximum transverse cross-sectional dimension of the second movable member that is different than that of the first movable member. This is illustrated at least from various figures in the Medrobotics '059 Patent, which illustrates the second movable member 235 being of a smaller cross section than hub 212.



40.     The Accused Products have the feature of the tool movement with respect to the distal end of the elongated shaft in the same direction of the control handle movement with respect to the proximal end of the elongated shaft.  The Medrobotics '059 Patent discloses that "a movement of the steering mechanism handle in one and only one of the first or second degrees of freedom relative to at least one of the housing or the hub translates to a movement of the articulation region in a single plane of motion" and "the second articulating axis is a horizontal axis, and wherein a rotation of the handle about the horizontal axis of the hub provides a vertical control of the articulation region."

41.    The Accused Products include the diameter of the second movable member is greater than the diameter of the first movable member. As shown in the Medrobotics '059 Patent below, the second movable member (U-joint 252) is greater in diameter than the articulation region, which is in turn greater in diameter than the first movable member (articulation region 235):



42.    The Accused Products include the control handle able to axially rotate relative to at least one of the instrument shaft and second movable member.

43.    The Accused Products include a rotation knob adjacent the control handle and rotatable relative to the control handle, for causing a corresponding rotation of the tool about a distal tool roll axis.  This is described in the Medrobotics '059 Patent at column 11, lines 9-14: "The handle 205 includes a plurality of controls that control a movement of the surgical instrument 200, for example, controlling the steering of the articulation region 235, rotating and/or articulating an end effector 250 at a distal end of the surgical instrument 200," and at column 17, lines 35-39:

12

"The handle 205 can further comprise a rotation knob 261 coupled to the support element 231, and that provides a rotational force to the support element 231, which in turn can rotate the end effector 250 coupled to the distal end of the support element 231." This is further illustrated on Defendant's website (*https://medrobotics.com/wp-content/uploads/2015/04/Flex-Instrument-Handle.jpg*).



44.     The Accused Products control handle is able to axially rotate relative to at least one of the instrument shaft and the second movable member.

45.     The Accused Products further include that the instrument shaft is flexible for passage intraluminally. For example, as stated in the Medrobotics '059 Patent (column 9, lines 56-59; column 11, lines 29-33): "the surgical instrument 200 can also include a surgical tool shaft," and "the flexible shaft 220 is constructed and arranged to follow…a tortuous path," and as shown on the Defendant's promotional video:

13



46.     The Accused Products further include a rolling-motion wheel adjacent the control handle and rotatable relative to the control handle. Further, the Accused Products cause a corresponding rotation of the tool about a distal tool roll axis. For example, this is discussed in the Medrobotics '059 Patent (column 11, lines 9-14; column 17, lines 35-39): "the handle 205 includes a plurality of controls that control a movement of the surgical instrument 200, for example, controlling the steering of the articulation region 235, rotating and/or articulating an end effector 250 at a distal end of the surgical instrument 200 surgical instrument 200 can also include a surgical tool shaft," and "the handle 205 can further comprise a rotation knob 261 coupled to the support element 231, and that provides a rotational force…which in turn can rotate the end effector 250…," and as shown on the Defendant's promotional video:



47.     The Accused Products further include a distal axial rotation joint for axially rotating the first movable member about the elongated shaft, and for axially rotating the tool about the first movable member.  For example, the Medrobotics '059 Patent (column 14, lines 32-39) discusses that the "surgical instrument 200 can include a support element 231 having…a distal end coupled to a housing…at or proximal to the end effector 250" and that the "support element 231 can be constructed and arranged to rotate independently of the movement of the articulation region 235 with a single degree of freedom." This is illustrated in FIGS. 6A and 6B of the Medrobotics '059 Patent.



48.    The Accused Products further include a motion member locking mechanism for releasably locking the movable members, with the motion member locking mechanism having a locking mechanism to impede cable means that extend between the movable members. For example, this feature is shown in the Medrobotics '059 Patent:



This is further discussed in the Medrobotics '059 Patent at column 15, lines 28-45:

The handle 205 includes the horizontal locking mechanism 207 and/or the vertical locking mechanism 209, each for enabling and disabling a degree of freedom in motion of handle 205 and a corresponding degree of freedom in motion of articulation region 235. Each locking mechanism 207 and 209 can be controlled by one or more locking controls (e.g. a

locking cam). The horizontal locking mechanism 207 and/or vertical locking mechanism 209, when activated, can prevent the steering mechanism from articulating with one or two degrees of freedom, which in turn can limit the articulation region 235 to movement with a single degree of freedom (when one of locking mechanism 207 or 209 is activated), or prevent any articulation of the articulation region 235 (when both locking mechanisms 207 and 209 are activated). For example, the vertical lock 209, when engaged, can limit the U-joint 252 to prevent a first degree of motion, (e.g. left/right motion) of the articulation region 235.

49.     The Accused Products further include that the locking mechanism is disposed at the proximal end of the instrument shaft. For example, as shown in Defendant's promotional video:



50.     The Accused Products further include that the locking mechanism fixes the orientation of the first and second movable members by immobilizing said cable means.   For example, as discussed and illustrated in the Medrobotics '059 patent (column 17, line 63-column 18, line 25):

The vertical lock 209 can include a clamping mechanism comprising a locking ring 411 and a cam clamp 412…the locking ring 411 can include a set of interdigitating teeth 414…the cam clamp 412 can apply a force to the locking ring 411 and therefore press the locking ring 411 towards the housing 210, locking the teeth 414…when the hub 212 is locked in this manner, the housing 210 and a shaft region coupled between the housing 210 and the articulation region 235 are locked in a fixed orientation such that horizontal steering cables 410a, 410b are locked in a fixed orientation with respect to articulation region 235…

17



51.     Therefore, the Accused Products meet all of the limitations of at least claims 4, 6-8, 10, 31, 34, 36, 38, 41, 44, 46, 48, 60, 65-66, and 73-74, literally or under the doctrine of equivalents.

## COUNT 2:  INFRINGEMENT OF U.S. PATENT NO. 8,409,245

52.     Endobotics re-alleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

53.     United States Patent No. 8,409,245 ("the '245 patent"), entitled "Surgical Instrument," was duly and legally issued by the U.S. Patent and Trademark Office on April 2, 2013.  Endobotics is the owner by assignment of all right, title and interest in and to the '245 patent, including all right to recover for any and all infringement thereof.   All necessary maintenance fees for the '245 patent have been timely paid in full.  The '245 patent is valid and enforceable.  A true and correct copy of the '245 patent is attached as Exhibit B.

54.     Claim 13 of the '245 patent recites, for example, an instrument.  The instrument includes a proximal handle and a distal tool.  The handle and tool are intercoupled by an elongated instrument shaft.  The instrument includes proximal and distal movable members that respectively intercouple the proximal handle and the distal tool with the instrument shaft.  Cabling is located

between the movable members, so that a motion at the proximal movable member controlled from the proximal handle, in turn controls the distal movable member. A cable pinch member is disposed distally of the proximal movable member, and has locked and released states. In the locked state, the cable pinch member fixes the position of the distal movable member and movable tool. A follower mechanism is located proximally to the proximal movable member, and has locked and unlocked states. The follower mechanism, in the unlocked state, enables the proximal movable member to be repositioned, controlled from the proximal handle, while the distal movable member is restrained by the pinch member.

55. Claim 22 of the '245 patent recites, for example, an instrument. The instrument includes a proximal handle and a distal tool. The handle and tool are intercoupled by an elongated instrument shaft. The instrument includes proximal and distal movable members that respectively intercouple the proximal control handle and the distal tool with the instrument shaft. Cabling is located between the proximal and distal movable members, and includes proximal and distal cabling ends, so that a motion at the proximal movable member controls the distal movable member and, in turn, the positioning of the distal tool. A follower mechanism is located proximally to the proximal movable member, and has locked and unlocked states. The follower mechanism, in the unlocked state, enables the proximal movable member to be moved without controlling the movement of the distal movable member.

56. Defendant makes, uses, sells, offers to sell, and/or imports into the United States Accused Products that infringe at least the aforementioned claims of the '245 patent.

57. The Accused Products include an instrument with an elongated instrument intercoupling a proximal handle and a distal tool, with a proximal movable member intercoupling the proximal handle and the shaft, and a distal movable member intercoupling the distal movable

member and the tool.    For example, as illustrated in the Medrobotics '059 Patent and the

Medrobotics promotional video:



58.    The Accused Products include cabling located between the movable members, so

that a motion at the proximal movable member controlled from the proximal handle, in turn

controls the distal movable member.  For example, this feature is described in Medrobotics '059

Patent, col. 13, lines 26-40:

> The controls in the handle 205 can advance and/or retract a plurality of
> steering cables 410a-410d (generally, 410), also referred to as articulation
> cables, coupled between a proximal portion of the tool 200 and the distal
> end of the articulation region 235. Articulation region 235 can articulate

in either a single degree of freedom steering mode or a multiple degree of freedom steering mode as described hereabove. One or more steering cables 410 can extend from the U-joint 252 through a path extending through the housing 210 and the tool shaft 215, 220 to the distal end of articulation region 235. Steering cables 410a, 410b can be constructed and arranged as horizontal steering cables, which extend from the hub 212 to the articulation region 235, and when activated move the articulation region 235 with a single degree of freedom.

59. The Accused Products further include a cable pinch member disposed distally of the proximal movable member, with locked and released states. In the locked state, the cable pinch member fixes the position of the distal movable member and movable tool. A follower mechanism is located proximally to the proximal movable member, and has locked and unlocked states. The follower mechanism, in the unlocked state, enables the proximal movable member to be repositioned, controlled from the proximal handle, while the distal movable member is restrained by the pinch member. For example, this feature is shown in the Medrobotics '059 Patent:



This is further discussed in the Medrobotics '059 Patent at column 15, lines 28-45:

The handle 205 includes the horizontal locking mechanism 207 and/or the vertical locking mechanism 209, each for enabling and disabling a degree of freedom in motion of handle 205 and a corresponding degree of freedom in motion of articulation region 235. Each locking mechanism 207 and 209 can be controlled by one or more locking controls (e.g. a locking cam). The horizontal locking mechanism 207 and/or vertical locking mechanism 209, when activated, can prevent the steering

mechanism from articulating with one or two degrees of freedom, which in turn can limit the articulation region 235 to movement with a single degree of freedom (when one of locking mechanism 207 or 209 is activated), or prevent any articulation of the articulation region 235 (when both locking mechanisms 207 and 209 are activated). For example, the vertical lock 209, when engaged, can limit the U-joint 252 to prevent a first degree of motion, (e.g. left/right motion) of the articulation region 235.

60.     Therefore, the Accused Products meet all of the limitations of at least claims 13 and 22, literally or under the doctrine of equivalents.

## **Willful Infringement**

61.     Endobotics re-alleges and incorporates the allegations in each of the preceding paragraphs as if fully set forth herein.

62.     Upon information and belief, all of Defendant's infringing activities have been done with knowledge, understanding and appreciation of the '650 patent and the '245 patent, and the rights in the surgical instrumentation these patents bestow on Endobotics.

63.     Upon information and belief, Defendant has known about the '650 patent and the '245 patent, and their pertinence to their business activities, for several years.

64.     For at least the past two years, rejecting all offers to discuss a license, Defendant has continued in a course of conduct without taking sufficient steps to ensure the non-infringement of the '650 patent and the '245 patent by, *inter alia*, continuing to sell, offer for sale and manufacture products whose use in the manner directed by Defendant infringes the '650 patent and the '245 patent.

65.     Upon information and belief, Defendant instructed their designer and manufacturer, Design Standards Corporation, to design the infringing product, based on the specifications of the Cambridge surgical instrument, as well as the '650 patent and '245 patent.

66.     Defendant's actions in spite of continued warnings by Endobotics evidence a

22

willful disregard of Endobotics' rights vis-à-vis the '650 patent and the '245 patent and a desire to profit irrespective of U.S. patent laws.

67.    Defendant's acts of infringement have caused and will continue to cause substantial and irreparable damage to Endobotics.

## DAMAGES

68.    On information and belief, 35 U.S.C. § 287(a) was complied with at all relevant times.

69.    Endobotics has sustained damages as a direct and proximate result of Defendants infringement of the '650 patent and the '245 patent.

70.    As a consequence of Defendant's past infringement of the '650 patent, and the '245 patent, Endobotics is entitled to the recovery of past damages in the form of, at a minimum, a reasonable royalty.

71.    As a consequence of Defendant's continued and future infringement of the '650 patent and '245 patent, Endobotics is entitled to royalties for its infringement of the '650 patent and '245 patent on a going-forward basis.

72.    Because Defendant's infringement of the '650 patent and '245 patent has been and continues to be willful, Endobotics is entitled to treble damages.

## PRAYER FOR RELIEF

73.    WHEREFORE, Endobotics respectfully requests that this court enter judgment against Defendants as follows:

A.    Adjudging that Defendants have infringed at least claims 4, 6-8, 10, 31, 34, 36, 38, 41, 44, 46, 48, 60, 65-66, and 73-74 of the '650 patent, and claims 13 and 22 of the '245 patent, in violation of 35 U.S.C. §§ 271(a) and (b);

B.      An award of damages to be paid by Defendants adequate to compensate Endobotics for Defendant's past willful infringement and any continuing or future infringement up until the date such judgment is entered, and in no event less than a reasonable royalty, including interest, costs and disbursements pursuant to 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including without limitation those sales not presented at trial;

C.      Ordering an injunction or for Defendant to continue to pay royalties to Endobotics for infringement of the '650 patent and '245 patent, on a going-forward basis at an increased amount to account for willfulness;

D.      Awarding Endobotics treble damages based on any infringement to be willful pursuant to 35 U.S.C. § 284;

E.      Adjudging that Defendant willfully infringed the patents-in-suit and this case be exceptional under 35 U.S.C. § 285 and awarding enhanced damages, including costs and attorneys' fees, to Endobotics;

F.      Awarding Endobotics pre-judgment and post-judgment interest at the maximum rate permitted by law on its damages; and

G.      Granting Endobotics such further relief as this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Endobotics, LLC demands a trial by jury on all claims and issues so triable.


/s/ John W. Shaw
John W. Shaw (No. 3362)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
OF COUNSEL:                                    Wilmington, DE 19801
Joseph M. Casino                               (302) 298-0700
Andrew D. Bochner                              jshaw@shawkeller.com
WIGGIN AND DANA LLP                            *Attorneys for Plaintiff*
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 490-1700

Benjamin M. Daniels
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510

Dated:  April 30, 2019