IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENDOBOTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-381-CFC |
| | ) | |
| MEDROBOTICS CORPORATION, | ) | Redacted: |
| | ) | Public Version |
| Defendant. | ) | |

**PLAINTIFF ENDOBOTICS, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AND ORDER FOR DAMAGES AGAINST DEFENDANT MEDROBOTICS CORPORATION**

OF COUNSEL:
Joseph M. Casino
Rikesh P. Patel
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 490-1700

Benjamin M. Daniels
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510

Dated: September 17, 2020

John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF THE PROCEEDINGS ...............................6

II.  SUMMARY OF ARGUMENT ............................................................8

III.  STATEMENT OF THE FACTS ...........................................................9

IV.  ARGUMENT .....................................................................................11

   A.  Standard of Review...........................................................................11

   B.  This Court Should Enter Default Judgment Against Medrobotics As
To Count 1 – Infringement Of U.S. Patent No. 7,147,650...................................12

   C.  This Court Should Enter Default Judgment Against Medrobotics As
To Count 2 – Infringement Of U.S. Patent No. 8,409,245...................................14

   D.  The Court Should Award Damages Against Medrobotics. ...............15

     a.  Endobotics should be awarded damages amounting to a reasonable
      royalty of 5%. .....................................................................................16

     b.  Because Defendant's infringement of the '650 patent and '245 patent
      has been and continues to be willful, Endobotics is entitled to treble
      damages. ...........................................................................................20

     c.  Because this case is exceptional under 35 U.S.C. § 285, the Court
      should award enhanced damages, including costs and attorneys' fees,
      to Endobotics. .....................................................................................24

   E.  Interest................................................................................................25

   F.  Separate and Final Judgment. ...........................................................26

V.  CONCLUSION .................................................................................26

# TABLE OF AUTHORITIES

### Cases

*Amgen Inc. v. Hospira, Inc*., 336 F. Supp. 3d 333, 364 (D. Del. 2018) ..................24

*Christ v. Cormick*, C.A. Nos. 06-275-GMS, 07-060-GMS, 2008 WL 4889127, at

    *1 (D. Del. Nov.10, 2008) ....................................................................................10

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)............................10

*Commerce Bank & Tr. Co. v. RIA, LLC*, No. CV 14-40140-TSH, 2015 WL

    12966279, at *1 (D. Mass. June 1, 2015)............................................................24

*Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)

    ....................................................................................................................................11

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003)...........15

*Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754* (2011) ...........................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923, 1932 (2016) ....................19

*IMX, Inc. v. LendingTree, LLC*, 469 F.Supp.2d 203, 227 (D. Del. 2007)...............24

*Ironworks Patents, LLC v. Apple, Inc*., 255 F. Supp. 3d 513, 533–34 (D. Del. 2017)

    ....................................................................................................................................24

*Jurgens v. CBK, Ltd*., 80 F.3d 1566, 1570 (Fed. Cir. 1996)...................................19

*LED Intellectual Prop., LLC v. Aeon Labs LLC*, No. 18-1847, 2020 WL 1528446,

    at *2–3 (N.D. Cal. Mar. 31, 2020).......................................................................22

*Levitation Arts, Inc. v. Plox, Inc*., C.A. No. 17-1476-MN, 2020 WL 2730905, at *2
(D. Del. May 26, 2020)............................................................................ 10, 12, 13

*Lexmark Int'l, Inc. v. Impression Prods*., 816 F.3d 721, 732 (Fed. Cir. 2016).......11

*LG Display Co. v. AU Optronics Corp*., 722 F. Supp. 2d 466, 475 (D. Del. 2010)24

*Liquid Dynamics Corp. v. Vaughan Co., Inc*., 449 F.3d 1209, 1225 (Fed. Cir. 2006)
............................................................................................................................19

*Luxottica Grp. S.p.A. v. Accessory Consultants LLC,* No. CV1911732KMMAH,
2020 WL 1910378 (D.N.J. Apr. 20, 2020) ........................................................18

*Mobil Oil Corp. v. Amoco Chemicals Corp*., 915 F. Supp. 1333, 1353 (D. Del.
1994)...................................................................................................................15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)..23

*Pereira v. Cogan*, 275 B.R. 472, 474 (S.D.N.Y.2002)...........................................24

*Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp*., 531 F. Supp. 2d 652, 657 (M.D.
Pa. 2007)...............................................................................................................7

*Sightsound.com, Inc. v. N2K, Inc*., 391 F. Supp. 2d 321, 355 (W.D. Pa. 2003).........15

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace
Young Inc*., 109 F.3d 105, 111 (2d Cir. 1997).....................................................11

*Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc*., 270 F.R.D. 161, 165 (D.
Del. 2010) ...........................................................................................................10

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc*., 609 F.3d 1308, 1319 (Fed.

  Cir. 2010) ............................................................................................................15

### Statutes

35 U.S.C. § 284 .....................................................................................................17

35 U.S.C. § 285 ................................................................................................ 20, 21

### Rules

Fed. R. Civ P. 54(b) ..............................................................................................22

Fed. R. Civ. P. 55(b) ...............................................................................................7

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Endobotics, LLC ("Plaintiff" or "Endobotics") is a Delaware company and successor-in-interest to Cambridge Endoscopic Devices, Inc. ("Cambridge"). D.I. 30 at 9.  Cambridge developed and manufactured novel and innovative minimally invasive surgical instruments.  Plaintiff filed a complaint on February 25, 2019 (D.I. 1), an amended complaint on April 30, 2019 (D.I. 8), and a second amended complaint on December 17, 2019 (D.I. 30).  All versions of the complaint sought a judgment of infringement and affirmative relief, including damages and injunctive relief against Defendant Medrobotics Corporation ("Defendant" or "Medrobotics"), which manufactures and sells surgical equipment.  D.I. 1 at 23-24; D.I. 8 at 23-24; D.I. 30 at 8-9.

Defendant answered the second amended complaint on January 17, 2020 and asserted counterclaims of non-infringement.  D.I. 32.  Plaintiff answered defendant's non-infringement counterclaims on February 6, 2020.  D.I. 33.  To accommodate Defendant's financial position, from the outset of the case the parties agreed to stay discovery while focusing on the claim construction as a first phase.  D.I. 16.  Before briefing on claim construction, Defendant asked for a delay of the briefing because of its severe financial position and offered an in-person settlement discussion as incentive.  D.I. 27.  However, at the hurried meeting, Defendant made no settlement proposal (Affidavit of John Schulte ¶ 33), and the claim

construction hearing was ultimately moved from April 1, 2020 to November 12, 2020, with the stay of discovery remaining in place.  D.I. 29.

On July 13, 2020, Defendant's counsel sought to withdraw due to lack of payment. D.I. 35 at 2-3.  Counsel represented that defendant had been provided with a copy of the motion to withdraw more than 14 days prior to filing the motion (i.e., no later than the end of June 2020).  *Id*. at 2.  The Court granted Defendant's motion, D.I. 36, on August 14, 2020, ordering that Defendant "shall retain new counsel . . . no later than August 21, 2020." D.I. 39 at 2.  The Court ordered Defendant's counsel to send a copy of the Court's order to Defendant by overnight courier within three business days of the order date.  *Id*. at 1.  Despite the Court's order, no counsel entered an appearance on behalf of Defendant.  Accordingly, Plaintiff moved pursuant to Federal Rule of Civil Procedure 55(a) for an order directing the Clerk of the Court to enter a default against Defendant.  D.I. 40.  The Court granted this motion and the Clerk entered a default against Defendant on September 2, 2020.  D.I. 41.[1]

---

[1] In a related action in the District of Massachusetts, *Endobotics LLC v. Design Standards Corp*., C.A. No. 20-10742-FDS (D. Mass.) (see D.I. 34), the Clerk entered a default against Medrobotics on June 5, 2020 after Medrobotics failed to respond to the complaint in that case.  *Endobotics LLC v. Design Standards Corp*., C.A. No. 20-10742-FDS, D.I. 15 (D. Mass. June 5, 2020). *See* Affidavit of John Schulte, Ex. B.

Endobotics moves for entry of default judgment on Counts 1 and 2 of the Complaint pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  In support of its Motion, Plaintiff submits this brief and the Affidavit of John Schulte, together with Exhibits A-I, inclusive, as attached, restated and incorporated by reference thereto (the "Schulte Affidavit"), and together with its form of Default Judgment, for consideration by this Court.

## II.   **SUMMARY OF ARGUMENT**

1.      Defendant purposefully chose to ignore a Court order to obtain substitute counsel and defend this action.  Plaintiff has, therefore, provided the court with information relevant to the calculation of a reasonable royalty and evidence of willfulness.  As discussed below, estimates of Plaintiff's damages are sufficient for purposes of establishing the amount of Plaintiff's damages and the Court should enter default judgment accordingly based on the best available estimates and evidence.

2.      A default judgment may be entered without a hearing under Fed. R. Civ. P. 55(b) if the defaulted party had fair notice of its opportunity to object. *See Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 531 F. Supp. 2d 652, 657 (M.D. Pa. 2007) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 (3d ed. 2007) ("Rule 55 does not require that testimony be presented as a prerequisite to the entry of a default judgment, and

3

thus several courts have determined that a hearing is not required before entering a default.")).  Nevertheless, Plaintiff respectfully requests a hearing on this Motion for Default Judgment should the Court conclude one is appropriate or necessary to decide this Motion.

## III.   STATEMENT OF THE FACTS

Endobotics is a Delaware company and successor-in-interest to Cambridge Endoscopic Devices, Inc. ("Cambridge").  D.I. 30 at 9.  Cambridge developed and manufactured novel and innovative minimally invasive surgical instruments with tools affixed to the end of the instruments, for which Cambridge acquired the patents-in-suit.  *Id*.  These tools provided significantly increased manipulative ability for surgeons in the fields of laparoscopic, trans-oral and trans-anal surgical techniques.  *Id*.  Endobotics acquired the patents-in-suit, along with Cambridge's know-how and trade secrets, when Cambridge went bankrupt.  *Id*.

Defendant Medrobotics manufactures and sells surgical equipment, including a single-port surgery solution with a highly articulated surgical instrument within a robotic system, providing a single-port approach with increased maneuverability (the "Flex® Robotic System").  *Id*. at ¶ 10.  This product incorporates the features claimed in numerous claims in Endobotics' patents.  *Id*.  Medrobotics has long known about Endobotics' patents.  Medrobotics had meetings with Cambridge going back to 2010. After failing to get Cambridge

4

to make Medrobotic's products, Medrobotics used the same manufacturer to make its products as Cambridge, which makes their products substantially identical to the Cambridge products and related patents assigned to Endobotics in 2015. (Schulte Aff. ¶ 23).

 

In 2017, Endobotics sent Medrobotics numerous notice letters and claim charts, in which Endobotics informed Medrobotics in detail that their product incorporates a number of features claimed in Endobotics' patents. *Id*. at ¶¶ 33-34. Defendant has refused to negotiate in good faith to avoid this lawsuit. Even after Endobotics presented detailed claim charts highlighting the elements of the Endobotics patents and mapping them to elements of the Medrobotics product, Defendant refused a substantive discussion of a license to cure its willful infringement, never making any offer of settlement. *Id*. at ¶ 11.

## IV.   ARGUMENT

### A. Standard of Review.

Under Fed. R. Civ. P. 55(b)(2), the Court may enter a default judgment after the Clerk has entered a default. "A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)); *see also Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc*., 270 F.R.D. 161, 165 (D. Del. 2010). In determining whether to enter a default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Levitation Arts, Inc. v. Plox, Inc*., C.A. No. 17-1476-MN, 2020 WL 2730905, at *2 (D. Del. May 26, 2020), report and recommendation adopted, C.A. No. 17-1476 (MN), 2020 WL 3103894 (D. Del. June 11, 2020) (citing *Genedics, LLC v. Meta Co*., C.A. No. 17-1062, 2019 WL 3802650, at *3 (D. Del. Aug. 13, 2019)).

Once liability is found, the Court is "required to calculate the appropriate amount of damages." *Christ v. Cormick*, C.A. Nos. 06-275-GMS, 07-060-GMS, 2008 WL 4889127, at *1 (D. Del. Nov.10, 2008) (citing *Comdyne I*, 908 F.2d at 1149). "The Court 'may conduct hearings or make referrals' when 'to enter or

6

effectuate judgment, it needs to determine the amount of damages,' Fed. R. Civ. P. 55(b)(2), and the defaulting party is entitled to be heard on the amount of damages." *Tristrata Tech*., 270 F.R.D. at 165 (citing 5 James Wm. Moore et al., Moore's Federal Practice § 55.32[1][c], [f]).

That said, a Court is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc*., 109 F.3d 105, 111 (2d Cir. 1997); *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty).

### B. This Court Should Enter Default Judgment Against Medrobotics As To Count 1 – Infringement Of U.S. Patent No. 7,147,650.

In Count 1, Plaintiff alleged that Defendant's Flex® Robotic System infringed Plaintiff's patent, U.S. Patent No. 7,147,650 ("the '650 patent"), in violation of 35 U.S.C. § 271(a). An infringement is the unauthorized making or using or selling of a patented invention. *See, e.g*., *Lexmark Int'l, Inc. v. Impression Prods*., 816 F.3d 721, 732 (Fed. Cir. 2016) (en banc), *rev'd & remanded*, 137 S. Ct. 1523 (2017) ("Congress has … prescribed that whoever, 'without authority,' does any one of the listed acts—'the making, using, offering to sell, selling, or importing of a patented invention,' *Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754* (2011) [] —is an infringer.") (emphasis omitted) (quoting 5 Donald S.

Chisum, Chisum on Patents § 16.01 (2015)) ('The exclusive rights are disjunctive: one may infringe by (1) making without selling or using, (2) using without making or selling or (3) selling without making or using.') (footnote omitted); William C. Robinson, The Law of Patents §§ 903–906 (1890))) (citing also *Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc*., 733 F.2d 858, 861 (Fed. Cir. 1984), cert. denied, 469 U.S. 856 (1984)) ("It is beyond argument that performance of only one of the three enumerated activities is patent infringement.")).

On a motion for default judgment in a patent infringement case, the Court must presume that Defendant has infringed Plaintiff's patents as was alleged in Plaintiff's Complaint. *Levitation Arts, Inc*., 2020 WL 2730905 at *2 (citing *Tristrata Tech., Inc. v. Cardinal Health, Inc*., No. 02-1290, 2004 WL 2223071, at *1 (D. Del. Sept. 30, 2004)). Here, Plaintiff adequately alleged and, based on Medrobotics' default, has established for purposes of this Motion each element of patent infringement. United States Patent No. 7,147,650 ("the '650 patent"), entitled "Surgical Instrument," was duly and legally issued by the U.S. Patent and Trademark Office on December 12, 2006.  D.I. 30 at ¶ 14. Endobotics is the owner by assignment of all right, title and interest in and to the '650 patent, including all right to recover for any and all infringement thereof.  *Id*.  All necessary

8

maintenance fees for the '650 patent have been timely paid in full. The '650 patent is valid and enforceable.[2] *Id.*

Specifically, the Complaint asserts that Defendant makes, uses, sells, offers to sell, and/or imports into the United States surgical instruments that implement what Defendant calls a "highly articulated multi-linked scope that can be steered along non-linear, circuitous paths" to operate through a single access site. *Id.* at ¶ 33. These instruments incorporate the features claimed in numerous claims in the '650 patent. *Id.* at ¶¶ 15-51. As discussed further below, Plaintiff has additionally established that such infringement was willful.

### C. This Court Should Enter Default Judgment Against Medrobotics As To Count 2 – Infringement Of U.S. Patent No. 8,409,245.

In Count 2, Plaintiff alleged that Defendant's Flex® Robotic System infringed Plaintiff's patent, U.S. Patent No. 8,409,245 ("the '245 patent"), in violation of 35 U.S.C. § 271(a). As described above, in motion for default judgment in a patent infringement case, the Court must presume that Defendant has infringed Plaintiff's patents as was alleged in Plaintiff's Complaint. *See Levitation Arts, Inc.*, 2020 WL 2730905 at *2. Here, Plaintiff adequately alleged and, based on Medrobotics' default, has established for purposes of this Motion each element of patent infringement with respect to the '245 patent. Indeed, the '245 patent

---

[2] A true and correct copy of the '650 patent is attached D.I. 30 as Exhibit A.

entitled "Surgical Instrument," was duly and legally issued by the U.S. Patent and Trademark Office on April 2, 2013.[3] D.I. 30 at ¶ 53. Endobotics is the owner by assignment of all right, title and interest in and to the '245 patent, including all right to recover for any and all infringement thereof. *Id.* All necessary maintenance fees for the '245 patent have been timely paid in full. The '245 patent is valid and enforceable. *Id.*

The Complaint asserts that Defendant makes, uses, sells, offers to sell, and/or imports into the United States surgical instruments incorporate numerous features claimed in the '245 patent. *Id.* at ¶¶ 52-60. As discussed further below, Plaintiff has additionally established that such infringement was willful and deliberate.

### D. The Court Should Award Damages Against Medrobotics.

Endobotics has sustained damages as a direct and proximate result of Defendants infringement of the '650 patent and the '245 patent. As a consequence of Defendant's past infringement of the '650 patent, and the '245 patent, Endobotics is entitled to the recovery of past damages in the form of, at a minimum, a reasonable royalty, including interest, costs and attorneys' fees under 35 U.S.C. § 285. Such award should additionally consider that Defendant's infringing

---

[3] A true and correct copy of the '245 patent is attached D.I. 30 as Exhibit B.

10

conduct was willful, and as such, damages should be trebled under 35 U.S.C. § 284.

### a. Endobotics should be awarded damages amounting to a reasonable royalty of 5%.

The Court should enter an award of damages adequate to compensate Endobotics for Defendant's past infringement and any continuing or future infringement up until the date such judgment, and in no event less than a reasonable royalty.  A reasonable royalty is the amount "a prudent licensee ... would have been willing to pay ... and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license." *Sightsound.com, Inc. v. N2K, Inc.*, 391 F. Supp. 2d 321, 355 (W.D. Pa. 2003) (citation omitted). The amount of such royalty "can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer..." *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

A patentee need not rely on an expert to establish a reasonable royalty.  *See, e.g.*, *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d] ... as an aid.'") (citing 35 U.S.C. § 284 (2000) (emphasis added)).  Indeed, "[c]ourts and commentators alike have recognized that the royalties received by the patentee for the licensing of the

patents in suit is the 'most influential factor' in determining a reasonable royalty." *Mobil Oil Corp. v. Amoco Chemicals Corp*., 915 F. Supp. 1333, 1353 (D. Del. 1994) (citing Chisum, 5 Patents § 20.03[3] at 20–159).

Endobotics respectfully submits copy of its licensing agreement with

, which sets a running royalty of        in addition to



is provided under seal. Schulte Aff., Ex G.  This license covers the same patents at issue here, in addition to several other Endobotics patents, for surgical devices and features.  Ex. G at 25-27.  This license is comparable because the licensee,                 is a medical-device manufacturer engaged in the sale of substantially the same products as Medrobotics. The license was a "a voluntary, arm's length" deal.  Schulte Aff. ¶ 42.

To account for the value of the                      , interest on past royalties and the identity of the Medrobotics products to the Endobotics' patents, the royalty-rate imposed on Medrobotics should be adjusted to reflect a 5% rate. As a consequence of Defendant's past, continued and future infringement of the '650 patent and '245 patent, such royalties should be paid for the past and on a going-forward basis.

A    royalty rate is consistent with the median royalty rate set by the
Licensing Executive Society's High Tech Sector Royalty Rates & Deal Terms
Survey Report 2017 for medical devices.  Schulte Aff., Ex. H.  LES has been the
leading association for intellectual property, technology, and business development
professionals to achieve professional and personal success.
(https://members.lesusacanada.org/page/about). LES is the global leader in
standards development, education, and certification in promoting IP commerce.
*Id.*  The Survey is conducted of LES' membership every three years.  The
conclusion of the study places the median royalty for medical devices/healthcare at
5%:

Schulte Aff., Ex. H at 19.  The royalty rates in the LES Survey are consistent with
industry expectations.  Schulte Aff. ¶ 44.

While Medrobotics never produced sales information, substantially all of Medrobotics' revenue is derived from the Flex® Robotic System, which relies on and could not function for its intended purpose without using the patents-in-suit and sells for approximately $1 million - $ 1.5 million per unit. *See* Schulte Aff. ¶¶ 37-38. Medrobotics received FDA approval to sell its product in July 2015 and commenced sales. Schulte Aff. ¶ 26. While Medrobotics' precise sales figures are unknown, "the defaulting defendant is largely to blame," as discovery in this case could not move forward as a result of default. *See Luxottica Grp. S.p.A. v. Accessory Consultants LLC, No. CV1911732KMMAH,* 2020 WL 1910378, at *6 (D.N.J. Apr. 20, 2020) (finding that the Court may conclude a measure of damages where it "lack[s] even a rudimentary basis to estimate actual loss").

Based on the independent, third-party source IncFact, Medrobotics estimated revenues from 2015 to 2019 were $ 136 million. Schulte Aff., Ex. D.[4] IncFact is a private research company that compiles comprehensive profiles on more than two million private companies in the U.S. for use by private investors. This data, relied upon by sophisticated investors, is reasonably believed to accurately reflect

---

[4] For similar products, the net profit as a percentage of revenues is approximately 70%. Schulte Aff. ¶ 40; *see also* Schulte Aff. Ex. E. High profitability on medical devices supports the 5% royalty. Schulte Aff. ¶ 40.

Medrobotics' sales.[5]  The level of investment in Medrobotics over the same period of time also supports the reliability of these sales figures.  Data from publicly available sources, including Medrobotics' own press releases, suggests a total of more than $ 206 million in equity and debt investment in the company, involving multiple funding rounds.  *See* Schulte Aff., Ex. I. These market indications suggest that Medrobotics confirms the sales estimates are reasonable and support a reasonable royalty of 5%. At minimum, a reasonable royalty of 5% would entitle Endobotics to damages in the amount of $6,800,000.

> ### b. Because Defendant's infringement of the '650 patent and '245 patent has been and continues to be willful, Endobotics is entitled to treble damages.

Section 284 provides that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  Where the fact-finder has determined that "an infringer is guilty of conduct upon which enhanced damages may be based, the court next determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (internal citation omitted).  Treble damages are designed as a sanction for egregious infringement behavior, which the Supreme Court has described as

---

[5] To the extent Medrobotics believes that the sales estimates are in error, it can put in actual sales information in reply to this Motion for Default.  Plaintiff will serve a copy of these papers by Federal Express.

"willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923, 1932 (2016). To determine whether an infringement is willful or in bad faith, the court will examine the totality of the circumstances. *See Liquid Dynamics Corp. v. Vaughan Co., Inc*., 449 F.3d 1209, 1225 (Fed. Cir. 2006).

Here, Plaintiff established that Defendant's infringing activities have been done with knowledge, understanding and appreciation of the '650 patent and the '245 patent, and the rights in the surgical instrumentation these patents bestow on Endobotics. Medrobotics was keenly aware of Endobotics patents since they were purchased in Cambridge's bankruptcy in September 2015. Medrobotics has defaulted in this action rather than defend against Plaintiff's claims.

Even prior to the manufacture and sale of the infringing product, Defendant was approached by Plaintiff's predecessor, Cambridge, to inquire if there was interest in having Cambridge develop the Medrobotics' product. Schulte Aff. ¶ 15. Based on these early contacts, Medrobotics was aware of the patents to the extent such technology was discussed in connection with a potential collaboration with Cambridge.

Medrobotics has been infringing the patents-in-suit at least as early as July 23, 2015, when it received FDA clearance to market the Flex® Robotic System and initiate commercial launch in U.S. hospitals, and continues its infringement to this

16

day.[6] Medrobotics' knowledge of infringement and bad faith use of Endobotics' technology is illustrated by the fact that chose the same contract manufacturer, Design Standards, Inc. ("Design Standards"), to make its infringing product. Schulte Aff. ¶¶ 18-22.  As the Complaint alleged, upon information and belief, that Defendant instructed their Design Standards Corporation to design the infringing product, based on the specifications of the Cambridge surgical instrument, as well as the '650 patent and '245 patent.  Schulte Aff. ¶¶ 22-24.  Such information is further supported by the declaration of John Schulte, Strategic Advisor to Plaintiff and former CEO of Cambridge, which states, *inter alia,* that "due to the short time period from which Medrobotics consummated a partnership with Design Standards, and then released their product publicly, it would have been impossible for Medrobotics and Design Standards to design and develop the Flex® Robotic System without utilizing Cambridge's confidential and proprietary information." Schulte Aff. ¶ 22.  Such evidence of blatant pirating of patented technology, without defense, is willful infringement.  *Halo Elecs.*, 136 S. Ct. 1923, 1932.

In October 2017, Endobotics, through counsel, informed Design Standards and Medrobotics of potential trade secret and patent infringement claims in a

---

[6] Endobotics provided a notice letter to Medrobotics in March 2017 and had complied with the marking requirement of 35 U.S.C. 287 at all relevant times before that date.  (Schulte Aff. ¶¶ 30-32). Accordingly, Endobotics is allowed past damages for Medrobotics' infringement.

17

detailed letter.  No substantive reply was ever made other than to suggest Medrobotics was responsible for resolving infringement issues.  *See* Schulte Aff. ¶¶ 33-35.  Accordingly, since at least 2017, Defendant was aware of the patents-in-suit.  *See id.*  During that time, Defendant ardently rejected all offers to discuss a license and continued in a course of infringing conduct.  *See id.* at ¶¶ 29-35.  After the bankruptcy in September 2015, Medrobotics refused to reasonably consider a license or explain why their device did not infringe, even though it is a virtual copy of Cambridge's patented product.  Endobotics repeatedly reached out directly to the top decisionmakers at Medrobotics, both formally and informally, and to provide a notice letter, claim charts and other details of infringement.  *Id.* at ¶¶ 29-30.  Rather than engage in a good faith discussion regarding a license, Medrobotics decided to use Endobotics technology and infringe the patents-in-suit, ignoring the patent-in-suit for its own convenience and profit.

Even since the filing of this lawsuit, Medrobotics has unreasonably refused professional discussion and is forcing Endobotics to pursue costly litigation. What's more, Defendant took no steps to ensure the non-infringement of the '650 patent and the '245 patent by, *inter alia*, continuing to sell, offer for sale and manufacture products that infringe the '650 patent and the '245 patent. Such post-complaint conduct alone may warrant a finding of treble damages.  *LED Intellectual Prop., LLC v. Aeon Labs LLC*, No. 18-1847, 2020 WL 1528446, at *2–

18

3 (N.D. Cal. Mar. 31, 2020) (awarding double damages on a default judgment for post-complaint infringement).

> ### c. Because this case is exceptional under 35 U.S.C. § 285, the Court should award enhanced damages, including costs and attorneys' fees, to Endobotics.

Adjudging that Defendant willfully infringed the patents-in-suit and this case is exceptional under 35 U.S.C. § 285, the Court should award enhanced damages, including costs and attorneys' fees, to Endobotics. Section 285 provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

As discussed above, Defendants' actions in this case were deliberate, willful and egregious.  Defendant's uncooperative conduct is must be considered in light of circumstances evincing that Defendant *set out* to infringe Endobotics' patents through its contacts with and use of the same manufacturer.  *See* Schulte Aff. ¶¶ 18-24.  When presented with the opportunity to cure this infringement, Defendant not only declined, but ignored Endobotics' entreaties.  *Id*. at ¶¶ 29-36.  For more than two years, Endobotics attempted to engage in meaningful discussions with

19

Defendant concerning the patents-in-suit and the offer of a license to cure infringement. *See id.* Defendants declined to engage or present meaningful defenses to infringement in response to multiple presentations and claim comparisons prepared by Endobotics and provided to Defendant. *See id.* Accordingly, this is an exceptional case warranting the award of costs and attorneys' fees to Plaintiff.

### E. Interest

The Court should also Endobotics post-judgment interest at the maximum rate permitted by law on its damages. "Courts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. LendingTree, LLC*, 469 F.Supp.2d 203, 227 (D. Del. 2007). Therefore, post-judgment interest in this case should be awarded at the prime rate, compounded quarterly. *See, e.g.*, *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018), aff'd, 944 F.3d 1327 (Fed. Cir. 2019); *Ironworks Patents, LLC v. Apple, Inc.*, 255 F. Supp. 3d 513, 533–34 (D. Del. 2017); *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 475 (D. Del. 2010).

**F.  Separate and Final Judgment.**

Plaintiff respectfully requests that the court enter separate judgment against Medrobotics under Fed. R. Civ P. 54(b).  Medrobotics is in financial distress and is likely to soon declare bankruptcy.  Schulte Aff. ¶ 41. Thus, "A delay could allow the assets of [Medrobotics] to be wasted and made unavailable to [Plaintiff] to satisfy the judgment." *Commerce Bank & Tr. Co. v. RIA, LLC*, No. CV 14-40140-TSH, 2015 WL 12966279, at *1 (D. Mass. June 1, 2015); *see also Pereira v. Cogan*, 275 B.R. 472, 474 (S.D.N.Y.2002) ("[c]ourts have frequently found no just reason for delay, and entered a Rule 54(b) judgment, when the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings.") (citing cases), aff'd 52 Fed. Appx. 536, 538 (2d Cir. 2002).

## V.    CONCLUSION

For the reasons stated above, Plaintiff submits that a Default Judgment on each such count should enter against Medrobotics, and for compensatory damages in the amount a reasonable royalty of 5%, for a total of $6,800,000; for enhanced damages in the amount of $20,400,000 under § 284, and costs and attorneys' fees under § 285.

21

/s/ Jeff Castellano
John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Joseph M. Casino
Rikesh P. Patel
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 490-1700

Benjamin M. Daniels
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510

Dated: September 17, 2020